# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINDAMARIE O'LEARY** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 20-1210** |
| **v.** | : | |
| | : | |
| **ARIA-JEFFERSON HEALTH** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 AUGUST 5, 2022

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Lindamarie O'Leary ("Plaintiff") filed this employment action against her former employer, Defendant Aria-Jefferson Health ("Defendant"), pursuant to the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 *et seq.*, averring that Defendant unlawfully terminated her employment because of her age.  Before this Court are Defendant's motion for summary judgment, [ECF 19], Plaintiff's response in opposition, [ECF 24], and Defendant's reply, [ECF 25].  The issues raised in Defendant's motion have been fully briefed and are ripe for disposition.  For the reasons set forth herein, Defendant's motion for summary judgment is granted.

### BACKGROUND

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant—here, Plaintiff.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196

(3d Cir. 2011).  The facts relevant to this motion, which are mostly undisputed, are summarized as follows:[1]

> Defendant is a healthcare system with three acute care facilities in Northeast Philadelphia and Bucks County.  Plaintiff began her employment with Defendant as a Certified Respiratory Therapist ("CRT") in May 1999.  "Among her duties as a CRT, Plaintiff was required to: '[a]dminister all modes of Respiratory Care to appropriate patients'; '[p]rovide all modes of Oxygen administration'; interact with physicians regarding the 'technical aspects of Respiratory Care'; and '[m]aintain confidentiality of workplace information according to the policies and procedures of the institution.'" (Def.'s Mot. for Summ. J., ECF 19-1, at p. 2) (alterations in original) (citing O'Leary Dep., ECF 19-3, at pp. 262–63; CRT Position Description, Responsibilities and Duties, Dep. Ex. A.45, ECF 19-4, at p. 2).

> In 2006, Lauren Diduch, also a CRT, began working for Defendant.  Sometime after Diduch's hire, Plaintiff, who worked night shifts, applied to fill a day shift and was given the position.  However, Plaintiff was inexplicably placed back on the night shift, and the day shift was given to Diduch.  Over the following years, Diduch received various promotions—in 2015 becoming the clinical supervisor of a team that included Plaintiff.  According to Plaintiff, Diduch frequently issued Plaintiff written warnings ("write-ups") based on the statements of others without ever addressing the concerns with Plaintiff.  Over the course of her tenure, Plaintiff was disciplined over a dozen times—some of the underlying incidents Plaintiff does not recall and others Plaintiff partially or completely agrees took place.

> On March 9, 2019, Plaintiff was providing respiratory care to a patient whose medical history included having gone into cardiac arrest and been revived 3 or 4 times with cardiopulmonary resuscitation ("CPR") and who was being treated in the Intensive Care Unit ("ICU").  While in the ICU, the patient was on a full-sized bedside ventilator, which operated at "peculiar settings" that had been specified for the patient.  The patient was to be transported from the ICU to the Radiology Department for a head scan.  Plaintiff was responsible for operating a portable ventilator during the patient's transportation. The transport ventilator was capable of replicating the same "peculiar settings" that had been specified for the patient and which were in use on the full-sized ventilator in the ICU before transport.  Plaintiff failed to place the portable ventilator on the peculiar settings, causing the alarm on the portable ventilator to sound as Plaintiff transported the patient.  Despite the continuous alarm, Plaintiff did not manually ventilate the patient with an Ambu bag in Plaintiff's possession during the transport for the CT scan.  "As a result, while at the CT scan, the patient's oxygen saturation level dropped precipitously, the patient's face and lips turned blue, a code was called, and the patient required CPR and manual bagging to be resuscitated." (Def.'s Mot. for

---

[1]      The facts set forth herein are gleaned from Defendant's statement of facts, [ECF 19-1, at pp. 2–10], Plaintiff's statement of facts, [ECF 24-1, at pp. 3–6], and Defendant's reply, [ECF 25, at pp. 1–7].

Summ. J., ECF 19-1, at p. 8). Despite having been trained twice on the use of portable ventilators, Plaintiff mistakenly thought that the portable ventilator could not replicate the stationary ventilator's custom settings. Notwithstanding this belief, Plaintiff did not manually ventilate the patient during transport.

Doctor Herbert Patrick ("Dr. Patrick")[2] overhead the alarm, stopped to examine the portable ventilator, decided it was functioning properly, and allowed the transport to continue. Dr. Patrick acknowledged during his deposition, however, that respiratory therapists know more about portable ventilators than doctors due to the training respiratory therapists receive.

Defendant maintains a Ventilator Policy that provides as follows:

If the patient is on a ventilator mode that is not available on the transport ventilator and/or the patient's condition is deemed critical by the physician and would require the patient's bedside ventilator to be used for procedures outside the critical care areas, then the patient will be manually ventilated to the destination by the therapist and the ventilator will be transported by other hospital personnel to the area.

(Ventilator Policy, ECF 19-4, at p. 172). Plaintiff was familiar with this policy.

On March 13, 2019, Plaintiff was attending to an ICU patient admitted the night before when she noticed that the patient's endotracheal tube holder had not been changed since the Emergency Medical Technicians, who had brought the patient to the hospital, had attached the holder. Defendant's standard procedure was to change the holder upon a patient's arrival at the hospital. Before changing the holder, Plaintiff—with the tacit permission of the patient's spouse[3]—used her cell phone to take two pictures of the unchanged holder, located on the patient's face, to memorialize the incident.

Thereafter, Plaintiff informed a human resources employee of the unchanged holder and the photos she took. Concerned about possible privacy violations, the human resources employee contacted Plaintiff's supervisor, Diduch, and Defendant's privacy manager about Defendant's internal policies and

---

[2]    Plaintiff interchangeably refers to this physician as both Dr. Herbert and Dr. Patrick in the response. Herbert is the individual's first name and Patrick is the individual's last name.

Dr. Patrick's impression of the relationship between Diduch and Plaintiff was that there was long-standing antagonism based on Diduch's promotion to supervisor.

[3]    Plaintiff contends she had the spouse's permission to take the photographs on account of the spouse's presence in the room and lack of any stated objection. Defendant disagrees that these circumstances amount to any type of permission to take the photographs but also argues that any dispute is immaterial.

Defendant's Health Insurance Portability and Accountability Act ("HIPAA") obligations.  After learning of the photographs, Diduch met with Plaintiff to discuss them.  Plaintiff confirmed that she had taken the photos and showed them to Diduch, who, in turn, forwarded the photos to the human resources employee and then assisted Plaintiff in deleting the photos from her cell phone.  Diduch then informed Plaintiff that she was being placed on administrative leave while Defendant investigated whether Plaintiff had violated HIPAA and/or Defendant's Photography Policy.  The privacy manager determined that because the photos were deleted and not shared outside of the facility, Plaintiff's actions were "not a privacy breach."  (Email from Privacy Manager Saleah Hinton to Human Resource Employee Jennifer Nat, ECF 24-7, at p. 1).

> Defendant's Photography Policy provides:

> > Aria Health does not allow any use of cell phones or computer devices to photograph, video or audio monitor/record patients by anyone on hospital property."  (Photography Policy, ECF 19-4, at p. 107).

> After Defendant completed a full investigation of both the ventilator and photography incidents, Defendant terminated Plaintiff's employment by letter dated May 10, 2019, signed by Diduch, for "[v]iolation of Photography Policy #910-034 on 3/13/2019 and Policy 913-601 Performance Coaching and Discipline, #6 Failure to meet standards/expectations of performance; unsatisfactory performance and #7 Failure to use appropriate judgment which impacts negatively on department operation or patient care on 3/9/2019."  (Termination Letter, ECF 24-5).  The specific performance issue charged was Plaintiff's alleged failure to follow the Ventilator Policy.  Plaintiff also contends that when she was fired, she was in her early 70s and was replaced by someone who was approximately 37 years old.  In response to why Plaintiff believes her termination was based on her age, she responded: "It was just how I felt when I was around [Diduch].  That's all." (Pl.'s Dep., ECF 19-3, at p. 192).

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice. Fed. R. Civ. P. 56.  Specifically, Rule 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* at 56(a).  A fact is "material" if proof of its existence or non-existence may affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Under Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citations omitted).

**DISCUSSION**

The ADEA provides, in part, that it is "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Discrimination claims brought under the ADEA are subject to the burden shifting analysis first set forth in *McDonnell*

*Douglas Corp. v. Green*. 411 U.S. 792, 801–02 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first present facts sufficient to demonstrate a *prima facie* case for age discrimination. *Id.* To maintain a *prima facie* federal age discrimination claim, a plaintiff must show that she (1) belongs to a protected class, *i.e.*, is over 40 years old, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by an individual sufficiently younger to permit an inference of age discrimination. *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995). Once a plaintiff establishes a *prima facie* case of age discrimination, the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the adverse action against the plaintiff. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (applying *McDonnell Douglas* burden shifting analysis to ADEA claim). Thereafter, the burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered reason is pretextual. *Id.* A pretextual reason is a "false or weak reason or motive advanced to hide the actual or strong reason or motive." *Pretext*, Black's Law Dictionary (11th ed. 2019); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

For a plaintiff to succeed when claiming unlawful discrimination under the ADEA, the plaintiff "must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 577 U.S. 167, 177–88 (2009) (citation omitted). A plaintiff may do so by either (1) direct evidence of age discrimination or (2) indirect evidence of age discrimination that satisfies the *McDonnell Douglas* framework. *Id.*

Here, Defendant does not challenge Plaintiff's ability to meet her *prima facie* burden. Rather, Defendant argues that summary judgment should be granted because Defendant has articulated legitimate, nondiscriminatory reasons for Plaintiff's employment termination that Plaintiff cannot rebut; *to wit*: Plaintiff's clinical and performance errors which violated the

6

hospital's ventilator and photography policies.  Plaintiff contends that the reasons proffered by Defendant are pretextual in nature.

To "avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).  Thus, Plaintiff must provide sufficient evidence from which a factfinder could reasonably disbelieve Defendant's articulated reasons or could reasonably "believe that that an invidious discriminatory reason was more likely than not a motivating or determinative cause . . . ." *Sterner v. Siemens Med. Sols. USA, Inc.*, 706 F. App'x 772, 775 (3d Cir. 2017).

To meet her summary judgment burden on pretext, Plaintiff must point to evidence sufficient for a reasonable factfinder to find that Defendant's proffered reason for her termination was merely a pretext for age discrimination and not the actual motivation for her termination.  This can be a "difficult task" for a plaintiff, arising "from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs." *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992).  In essence, a plaintiff must present evidence sufficient to show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Grochowski v. Wilkes-Barre Behavioral Hospital Co., LLC*, 2019 WL 361131, *6 (M.D. Pa. Jan. 29, 2019) (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108–09 (3d Cir. 1997)).

To meet this burden, a plaintiff must "present evidence contradicting the core facts put forth by the employer, as the legitimate reasons for its decision," *Kautz v. Met-Pro Corp.*, 412 F.3d

463, 467 (3d Cir. 2005), so that "a factfinder could reasonably conclude that each reason was a fabrication" or "that discrimination was more likely than not a motivating or determinative cause of the adverse employment action," *Fuentes*, 32 F.3d at 762.  A plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that show the employer's proffered reasons to be "unworthy of credence," *Fuentes*, 32 F.3d at 765, showing not merely that the employer's proffered reasons were wrong or mistaken but that the employer acted with discriminatory animus, *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001).  A plaintiff may meet this burden by presenting evidence to show, for example, that (1) the employer subjected the plaintiff to unlawful discriminatory treatment in the past, (2) the employer "treated other, similarly situated persons not of [the plaintiff's] protected class more favorably," or (3) the employer has discriminated against other members of the plaintiff's protected class or against other protected classes.  *Fuentes*, 32 F.3d at 765.  Plaintiff has not met her rebuttal burden.

As noted, Defendant proffers two reasons for its termination of Plaintiff's employment: (1) the serious clinical errors Plaintiff committed when providing respiratory care to a patient being transported from the ICU to the Radiology Department for a CT scan and (2) Plaintiff's violation of another patient's privacy and the Photography Policy when she photographed the unconscious patient.

As to the first incident, Defendant points to evidence showing that on March 9, 2019, after having been twice trained on how to use the portable ventilator in question, Plaintiff failed to correctly set and operate the portable ventilator when transporting a seriously compromised patient from the ICU to the Radiology Department.  As a result, the portable ventilator failed to deliver the appropriate oxygen levels to the patient.  The low oxygen levels were evidenced from

the audible alarm sounding while the patient was being transported.  Despite the alarm sounding, Plaintiff also failed to follow Defendant's written Ventilator Policy that required Plaintiff to manually ventilate the patient with a bag.  According to Defendant, these performance errors caused the patient to go into cardiac arrest and require both CPR and manual bagging for resuscitation.

Plaintiff argues that Defendant's reliance on the ventilator incident as a basis for her termination is pretextual for age discrimination.  In support, Plaintiff points to evidence showing that Dr. Patrick, a physician with thirty years of experience, reviewed the settings on the portable ventilator mid-transport and gave his approval for the transport to continue.  Plaintiff argues that she had no reason to distrust Dr. Patrick's review and simply followed his orders to continue transporting the patient.  Plaintiff's argument, however, ignores the uncontroverted evidence that Plaintiff was a healthcare professional trained on the proper operation of the portable ventilator and, more importantly, was the person responsible for the patient's care and for the proper operation of the portable ventilator.  While there is no dispute that Dr. Patrick examined the settings, Dr. Patrick acknowledged that the respiratory therapists are more knowledgeable than the doctors on the use of the ventilators.  He was neither the person responsible for transporting the patient, nor was he monitoring the patient during the transport; it is undisputed that Plaintiff was responsible for maintaining the proper settings on the respirator while transporting the patient.  Further, the fact that the ventilator alarm was sounding was an indicator that the patient was not receiving sufficient oxygen and needed assistance.  Because of Plaintiff's failure to operate the portable ventilator properly, the patient went into cardiac arrest and needed to be resuscitated.  Given Plaintiff's actions and the consequences thereof, it is nearly impossible to see how Defendant's proffered reason here is "so plainly wrong that it cannot have been the

employer's real reason." *Grochowski*, 2019 WL 361131 at 6 (citing *Keller*, 130 F.3d at 1108–09).  In light of the undisputed evidence with respect to the ventilator incident, this Court finds that a reasonable factfinder could not infer that Defendant's proffered non-discriminatory reason was either a *post hoc* fabrication or otherwise did not actually motivate Defendant's decision to terminate Plaintiff's employment.  *Fuentes*, 32 F.3d at 764.

Plaintiff's reliance on Dr. Patrick's purported oversight to rebut Defendant's proffered reasons for termination is also misplaced in light of Defendant's Ventilator Policy.  As Plaintiff was aware, the Ventilator Policy provided that "[i]f the patient is on a ventilator mode that is not available on the transport ventilator," which Plaintiff mistakenly believed to be the case, then the respiratory therapist must manually ventilate (a/k/a "bag") the patient to the destination and ensure that a full-sized ventilator is transported to the destination.  Despite Plaintiff's incorrect belief that the transport ventilator did not have the necessary settings for the patient, Plaintiff failed to "bag" the patient and ensure that a full-sized ventilator was transported to the destination.  Plaintiff's reliance on Dr. Patrick's examination does not excuse her failure to follow the Ventilator Policy.  Indeed, by the time Dr. Patrick checked out the ventilator, Plaintiff had already violated the Ventilator Policy in the following ways: (1) by failing to replicate the custom settings from the stationary ventilator on the portable ventilator and (2), under Plaintiff's incorrect understanding that the custom settings could not be replicated on the portable ventilator, by failing to manually ventilate the patient or ensuring the full-sized ventilator was transported to the destination.  Under these circumstances, Plaintiff has failed to present evidence from which a reasonable factfinder could find that the ventilator incident was a pretextual reason for her termination.

Plaintiff argues that Defendant's reliance on the photography incident was also pretext for age discrimination.  In support, Plaintiff contends that there was no violation of the policy because she took the photographs in the presence of the patient's spouse and with the spouse's tacit permission.  In addition, Plaintiff argues that because Defendant's privacy manager concluded that no breach of the patient's privacy occurred, Defendant's reliance on this alleged breach of the policy was pretextual.  Plaintiff is mistaken on both counts.

As noted, the Photography Policy provides: "Aria Health does not allow any use of cell phones or computer devices to photograph, video or audio monitor/record patients by anyone on hospital property."  (Photography Policy, ECF 19-4, at p. 107).  Nowhere does the policy contemplate that permission—actual or tacit—would be an exception to strict adherence to the policy.  As such, the lack of protest from the photographed patient's spouse does not ameliorate the violation of the policy, and the same is true of the privacy manager's conclusion that there was no violation of the patient's privacy.  It is clear that the privacy manager opined on whether the patient's privacy interests were violated under HIPAA, not whether Plaintiff had violated Defendant's Photography Policy.  Regardless, in light of the undisputed evidence with respect to the photography incident, this Court finds that a reasonable factfinder could not infer that Defendant's proffered non-discriminatory reason was either a *post hoc* fabrication or otherwise did not actually motivate Defendant's decision to terminate Plaintiff's employment.  *Fuentes*, 32 F.3d at 764.

In further support of her pretext argument, Plaintiff relies on Dr. Patrick's observation of long-standing antagonism between Plaintiff and Diduch, not based on job performance, and Dr. Patrick's opinion that Plaintiff had an excellent skill set and dedication to patients.  After reviewing Dr. Patrick's testimony, this Court finds that Dr. Patrick's statements regarding Plaintiff's skill set

11

and her relationship with Diduch do not support Plaintiff's contentions that Defendant's proffered reasons for termination were fabrications and/or not the motivating or determinative factor in Plaintiff's termination. *Fuentes*, 32 F.3d at 764; *Sterner*, 706 F. App'x at 775.

Lastly, in response to why Plaintiff believes her termination was based on her age, she responded: "It was just how I felt when I was around [Diduch]. That's all." (Pl.'s Dep., ECF 19-3, at p. 192). To avoid summary judgment, Plaintiff must show sufficient evidence from which a factfinder could reasonably either: (1) disbelieve Defendant's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason—here, Plaintiff's age—was more likely than not a motivating or determinative cause of Defendant's action. *See Sterner*, 706 F. App'x at 775; *see also Fuentes*, 32 F.3d at 764 ("[P]laintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a *post hac* fabrication or otherwise did not actually motivate the employment action."). Plaintiff has not met her burden. A plaintiff's mere speculation is insufficient proof of age discrimination. *Sterner*, 706 F. App'x at 775–76; *see also Tolan v. Temple Health Sys. Transp. Team, Inc.*, 2013 WL 706049, at *7 (E.D. Pa. Oct. 7, 2016) ("In the end we are left only with Tolan's subjective belief that she was discriminated against, and that is not enough to survive summary judgment."), *aff'd*, 557 F. App'x 132 (3d Cir. 2014).

**CONCLUSION**

For the foregoing reasons, Plaintiff cannot maintain her claim for age discrimination under the ADEA. Accordingly, Defendant's motion for summary judgment is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.